UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| | : | |
| v. | : | Case No. 24-cr-246 (GMH/JEB) |
| | : | |
| DAVON CUNNINGHAM, et al. | : | |
| | : | |
| Defendants. | : | |

### GOVERNMENT'S MEMORANDUM IN SUPPORT OF PRE-TRIAL DETENTION

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this memorandum in support of its oral motion that the defendants be detained pending trial pursuant to 18 U.S.C. § 3142 (f)(1)(C) and 18 U.S.C. § 3142 (f)(2)(A) of the federal bail statute. The government requests that the following points and authorities, as well as any other facts, arguments and authorities presented at the detention hearing, be considered in the Court's determination regarding pre-trial detention.

#### I. Procedural History

Defendants Davon Cunningham, Levancie Carr, Roosevelt Richardson, Jalonie Hooper, Jvares Wright and others are charged by indictment with Conspiracy to Distribute and Possess with Intent to Fentanyl, Fentanyl Analogue, and Cocaine in violation of Title 21 U.S.C. §§ 846, 841(a)(1), (b)(1)(A), (b)(1)(B), and (b)(1)(C). A few defendants remain at large. Defendant Edward Williams is currently charged in the same conspiracy, but only by complaint. There is a rebuttable presumption that each of the defendants be held under 18 U.S.C. § 3142(e)(3)(A).

## II. Legal Authority and Argument

As a preliminary matter, the "rules concerning the admissibility of evidence in criminal trials do not apply to the presentation and consideration of information at the [detention] hearing." 18 U.S.C. § 3142(f). Specifically, the presentation of hearsay evidence is permitted. Id.; United States v. Smith, 79 F.3d 1208, 1210 (D.C. Cir. 1996). Moreover, the government is not required to "spell out in precise detail how the government will prove its case at trial, nor specify exactly what sources it will use." United States v. Martir, 782 F.2d 1141, 1145 (2d Cir. 1986); United States v. Williams, 798 F. Supp. 34, 36 (D.D.C. 1992). A pretrial detention hearing should not be used as a discovery device and cross-examination should be limited to the disputed issues, since the detention hearing is not to be turned into a mini-trial and is not to be used as a subterfuge to obtain discovery. Smith, 79 F.3d at 1210, see also Williams, 798 F. Supp. at 36.

There are four factors under Section 3142(g) that the Court should analyze in determining whether to detain the defendant pending trial: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the defendant; (3) his history and characteristics; and (4) the nature and seriousness of the danger to any person or the community that would be posed by his release. 18 U.S.C. § 3142(g); see United States v. Zhang, 55 F. 4th 141 (2d Cir. 2022) (holding that each factor is to be given equal weight); see also United States v. Blackson, 23-cr-25 (Doc. 18 at 17-20) (Howell, C.J.) (following Zhang and discussing contrary opinion from Ninth Circuit). A review of these factors shows that detention is appropriate. A review of these factors shows that detention is appropriate.

### A. Nature and Circumstances of the Offenses Charged

In July of 2023, in connection with the investigation, agents installed pole cameras in the 1100 block of Raum Street, N.E., Washington, D.C. Over the course of several months, from

July 2023 to the present, video from the pole cameras showed the same general pattern: a group of men, including Davon Cunningham, Levancie Carr, Roosevelt Richardson, Edward Williams, Jvares Wright, and Jalonie Hooper (collectively, "Trinidad Crew"), regularly made hand-to-hand transactions with individuals who drove into the area or walked through area. Members of the group generally took turns making hand-to-hand transactions with the individuals who came into the area, and they engaged in these hand-to-hand transactions on an almost daily basis. As explained below, agents were able to confirm that these individuals were engaged in narcotics trafficking by making over 40 controlled purchases of narcotics—primarily cocaine base and fentanyl--using confidential informants (CIs) and undercover officers (UCs). Furthermore, members of the group regularly went to the same buildings before and after conducting several hand-to-hand transactions with individuals. Finally, members of the group routinely discouraged others from the block by approaching vehicles that came into the area and asking the occupants why they were there.

In search warrants conducted on May 23, 2024 at various stash houses and residences of the co-conspirators, agents recovered 15 firearms, approximately $126,000 in cash, and significant quantities of suspected narcotics including suspected cocaine, methamphetamine, and fentanyl. Accordingly, this factor favors detention as to each of these defendants. See United States v. Glasgow, 2021 WL 2403136 at *7 (D.D.C.) (Lamberth, J.) (noting that two milligrams of fentanyl can be fatal); see also United States v. Rocha, 2019 WL 4384465 at *4 (N.D. Ill.) (noting that illegal trafficking in firearms presents a danger to the community).

    B.    **Weight of the Evidence Against the Defendants**

3

The second factor to be considered, the weight of the evidence, also clearly weighs in favor of detention. As noted above, using CIs and UCs, law enforcement made numerous controlled purchases on narcotics from members of the Trinidad Crew. These purchases were generally recorded using a small, audio/video recording device. Law enforcement also conducted extensive surveillance and conducted search warrants on residences of the group and at suspected stash houses. Some of this evidence is set forth below separately for each defendant.

### Cunningham

Over the course of the investigation, from August 2023 to the present, UCs and CIs have made more than 25 controlled purchases of narcotics directly from Cunningham. They have purchased approximately 542 grams of fentanyl and nearly 100 grams of cocaine base directly from him during these purchases. Cunningham sold suspected fentanyl to UC and/or CI in May of 2024. He also sold a firearm to the UC.

### Carr

UCs and/or CIs made approximately 18 controlled purchases of narcotics from Carr from August 2023 up to and including February 2024. The purchases, based on DEA lab testing, totaled over 40 grams of fentanyl and 20 grams of cocaine base. Moreover, in executing a search warrant at Carr's residence, agents found over $100,000 in cash and five guns.

### Richardson

Over the course of the investigation, CIs have purchased approximately 11.64 grams of cocaine base and approximately 27.659 grams of fentanyl directly from Richardson. The most recent controlled purchase was on February 13, 2024, in which the CIs purchased approximately 7.57 grams of fentanyl and approximately 3.43 grams ofcocaine base directly from him.

Further, in one of the controlled purchases, Richardson told the CIs who were buying narcotics from other individuals in the block that "it was all coming from the same place," showing that he and the others shared the same source of supply. Finally, at a search warrant executed at one of his residences, which also serves as a stash house, agents located Richardson, five firearms, multiple magazines, approximately 200 rounds ammunition, 27 small, ziplock bags containing suspected narcotics, multiple digital scales, and other drug paraphernalia.

### Hooper

Over the course of the investigation, UCs and/or CIs purchased narcotics from Hooper on approximately seven occasions. These purchases totaled 80 grams of fentanyl and five grams of cocaine base. In a search of his residence, agents located over 100 rounds of ammunition. Accordingly, this factor favors detention as to Mr. Hooper.

### Wright

UCs and/or CIs purchased cocaine base directly from defendant Wright on only a few occasions. However, on or about September 8, 2023, he was arrested in actual possession of a Glock handgun and additional cocaine base. He is charged with a violation of 18 U.S.C § 924(c) in Count Four of the indictment for that offense. This factor, then, favors detention.

### Williams

UCs and/or CIs purchased cocaine base and small amounts of fentanyl directly from Williams on only a few occasions. However, during surveillance, he was regularly seen entering suspected stash houses using a key. Agents recovered numerous firearms, ammunition, suspected narcotics, digital scales, and other drug paraphernalia from those locations. Also, on at least one occasion, he told UCs and/or CIs that no one selling "down" (slang for heroin or

fentanyl) was available. Finally, when he was arrested on May 23, 2023, he was just outside one of the stash houses and in reach of a .40 caliber handgun that had been placed on the ground. The government believes that this factor weighs in favor of detention.

### C. The Defendant's History and Characteristics

Under the third factor, the court is to consider a defendant's criminal convictions, arrests, employment status, ties to the community, and past performance while on release. See United States v. Taylor, 289 F. Supp. 3d 55, 70 (D.D.C. 2018) (Moss, J.); see also United States v. Thomas, 21-cr-724 (Doc. 13) (Opinion and Order Detaining Defendant) at 5 (Cooper, J.). This factor weighs in favor of detention for each defendant.

### Cunningham

As noted in the Pre-Trial Services Report (PSR), defendant Cunningham has two prior felony drug convictions from 2017—2017-CF2-03446 (Attempted Distribution of Cocaine) and 2017-CF2-01542 (Attempted Possession with Intent to Distribute Cocaine). He also has prison breach conviction, 2010-CF2-010502. He does not appear to be employed. Accordingly, this factor weighs in favor of detention.

### Carr

As noted in the PSR, defendant Carr has two prior adult felony drug convictions from 2002 and 2004. While these convictions are relatively old, this factor still weighs in favor of detention as to him. See, e. g., United States v. Spear, 2020 WL 7640875 at *2 (D. Col.) ("Even though the defendant's felony convictions are eleven years old, they are for the sale of a controlled substance and possession with intent to sell a controlled substance . . . The fact that these convictions involve essentially the same charges as the drug charges in this case, demonstrates that the defendant is a

danger to the community if released based on the risk that he will continue to deal drugs."); United States v. Anderson, 2019 WL 4655900 (N.D.W.V.) (12 year old conviction weighed in favor of detention when it was similar to the charged offense)

### Richardson

Defendant Richardson has a prior conviction for assault with intent to kill while armed and related charges (1996-FEL-003613) and a prior carrying a pistol without a license conviction from 1994 (1994-FEL-007946). Mr. Richardson was released from custody in 2015, and he remains on court supervision. Thus, this factor thus weighs in favor of detention as to defendant Richardson. See 18 U.S.C. § 3142(g)(3)(B) (noting that court should consider if defendant was on supervision at time of offense).

### Hooper

Defendant Hooper has a pending Superior Court case, 2023-CF2-5552 in which he is charged with possession with intent to distribute cocaine. Several of the controlled purchases from him took place after his arrest in that case. Accordingly, this factor favors detention as he has shown he cannot comply with conditions of release.

### Wright

Defendant Wright has multiple pending Superior Court cases. He is charged with contempt and, in a misdemeanor case, with assaulting a police officer. He also has recent misdemeanor convictions for drug possession and attempted possession of a prohibited weapon. Accordingly, this factor favors detention.

### Williams

Defendant Williams is unemployed and has 26 prior arrests. In fairness, his serious

convictions are somewhat dated. He has felony drug convictions from 2003 and 1993. However, he has a firearms and ammunition conviction from 2007. This factor weighs slightly against detention in the government's view.

### D. Danger to the Community

The fourth factor, the nature and seriousness of the danger to any person or the community posed by the defendants' release, also weighs in favor of detention as to all defendants. As noted above, based on the charges in the indictment, there is a rebuttable presumption that "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community" where a judicial officer determines that there is probable cause to believe that the person committed the charged offense. 18 U.S.C. § 3142(e)(3) and 18 U.S.C. § 3142 (e)(3)(A). Under the Bail Reform Act, 18 U.S.C. §§ 3142 et se/q., "[t]he statutory language, as well as the legislative history, unequivocally establishes that Congress intended to equate traffic in drugs with a danger to the community." United States v. Strong, 775 F.2d 504, 506 (3d Cir. 1985). Its legislative history also "fully supports the conclusion that Congress intended to equate drug trafficking with danger to the community." Strong, 775 F.2d at 507. As noted by the D.C. Circuit:

> The legislative history indicates that the rebuttable presumption covering serious drug trafficking offenses was included because:
>
>> Persons charged with major drug felonies are often in the business of importing or distributing dangerous drugs, and thus, because of the nature of the criminal activity with which they are charged, they pose a significant risk of pretrial recidivism. Furthermore, the Committee received testimony that flight to avoid prosecution is particularly high among persons charged with major drug offenses. Because of the extremely lucrative nature of drug trafficking, and the fact that drug traffickers often have established substantial ties outside the United States from whence most dangerous drugs are imported into the country, these persons have both the

8

> resources and the foreign contacts to escape to other countries with relative ease in order to avoid prosecution for offenses punishable by lengthy prison sentences.

United States v. Alatishe, 768 F.2d 364, 370 n.13 (D.C. Cir. 1985) (quoting S. Rep. No. 225, 98th Cong., 1st Sess. 20 (1983), U.S. Code Cong. & Admin. News 1984, p. 3203). Thus, in creating a presumption of pretrial detention for serious drug trafficking offenses, both the legislative history and the statutory language make clear that very "real-world" concerns lie behind the recognition of the inherent, pretrial dangers and flight risks posed by those who commit serious drug trafficking offenses.

The presumption is rebuttable and does not shift the ultimate burden of proof from the government's shoulders. But it does create a burden of *production* on the defense to submit at least some credible evidence that might purport to overcome it. And even if the defense does submit such evidence, the presumption remains as a factor that may be considered by the Court among others in determining whether the defendant should be detained, and the presumption retains "evidentiary weight." United States v. Dillon, 938 F.2d 1412, 1416 (1st Cir. 1991) ("When a defendant produces such evidence, however, the presumption does not disappear. The burden of persuasion remains on the government and the rebutted presumption retains evidentiary weight") (citations omitted); United States v. Rueben, 974 F.2d. 580, 586 (5th Cir. 1992) (the mere production of evidence [regarding flight risk for a drug offense] does not completely rebut the presumption . . . In making its ultimate determination, the court may still consider the finding by Congress that drug offenders pose a special risk of flight and dangerousness to society" (citation omitted); United States v. Rodriguez, 950 F.2d 85, 88 (2nd Cir. 1991) ("Although the government retains the burden of persuasion, a defendant must introduce some evidence contrary to the presumed fact in order to rebut the presumption . . . Once a defendant introduces rebuttal evidence,

9


the presumption, rather than disappearing altogether, continues to be weighed along with other factors to be considered when deciding whether to release a defendant . . . see also United States v. Jessup, 757 F.2d 378, 382-83 (1st Cir.1985) (rejecting "bursting bubble" approach)" (internal citation omitted)); see also United States v. Ali, 793 F.Supp.2d 386, 388 and 388 n.2 (D.D.C. 2011) ("Even if such contrary evidence or credible proffers are offered, the presumption remains as a factor to be considered by the Court amongst others in determining whether the defendant should be detained").

Here, this factor weighs in favor of detention for each of these defendants. As noted above, the investigation demonstrates the defendants' involvement in large-scale drug trafficking conspiracy. Agents recovered large amounts of narcotics in controlled purchases and in search warrants. Further, the defendants chose to deal in some of the most dangerous drugs in the United States—fentanyl and cocaine base. Agents also recovered 15 firearms and over $100,000 in cash from the defendants. Accordingly, this factor weighs in favor of detention as to each defendant. See United States v. Glasgow, 2021 WL 2403136 at *7 (D.D.C.) (Lamberth, J.) (noting that two milligrams of fentanyl can be fatal); see also United States v. Rocha, 2019 WL 4384465 at *4 (N.D. Ill.) (noting that illegal trafficking in firearms presents a danger to the community).

### III. Conclusion

The government respectfully requests that the Court issue an Order granting its motion that these defendants be held without bond pending trial.

Respectfully submitted,

MATTHEW GRAVES,
UNITED STATES ATTORNEY

By:   /s/_____
Nihar R. Mohanty
D.C. Bar No. 436-686
Assistant United States Attorney
United States Attorney's Office for D.C.
Patrick Henry Building
601 D Street, N.W., Fifth Floor
Washington, D.C. 20530
E-mail: Nihar.Mohanty@usdoj.gov
Telephone: (202) 252-7700