**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | : |
| | : |
| v. | : Case No. 24-cr-246-1 (JEB) |
| | : |
| **DAVON CUNNINGHAM,** | : |
| | : |
| **Defendant.** | : |

### GOVERNMENT'S MEMORANDUM IN AID OF SENTENCING

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, hereby submits its Memorandum in Aid of Sentencing. For the reasons herein and in accordance with the plea agreement, the Government requests that the Court sentence the defendant to 150 months of incarceration and impose a period of five years of supervised release.

**I.      SENTENCING FACTORS**

In sentencing a defendant, after calculating the appropriate Guideline range, the Court must consider the factors set forth in 18 U.S.C. § 3553.[1] *See Gall v. United States*, 552 U.S. 38 (2007). These factors are in keeping with the traditional factors used by courts when imposing a sentence: (1) the protection of society against wrongdoers; (2) the punishment or discipline of the wrongdoer; (3) the reformation of the wrongdoer; and (4) the deterrence of others from the

---

[1] The Pre-Sentence Report (PSR) correctly states that, because the defendant is a career offender, his Guideline range is 262-327 months. Pursuant to the plea agreement, the Government agreed to ask for a sentence within the applicable range as if he were not a career offender, which was estimated to be 121-151 months. The parties incorrectly estimated the defendant's criminal history and that range is actually 141-175 months. *See* PSR at 39-40. The version of the plea agreement signed by the defendant and filed with the Court did not include this agreement limiting the Government's allocution, but the Government will of course abide by it.

commission of like offenses. *See Spanziano v. Florida*, 468 U.S. 447, 477-78 (1984) (Stevens, J., concurring); *see also Williams v. New York*, 337 U.S. 241, 251 (1949). Further, under the Guidelines and Section 3553, similarly situated defendants should receive like punishments. *See* 18 U.S.C. § 3553(a)(6).

## II.    FACTUAL AND PROCEDURAL BACKGROUND

As set forth in the proffer submitted in support of the plea agreement, in July of 2023, in connection with an investigation into drug trafficking in the Trinidad neighborhood, law enforcement installed pole cameras in the 1100 block of Raum Street, N.E., Washington, D.C. Video from the cameras showed a group of men making hand-to-hand transactions with the individuals who came into the area, and they engaged in these hand-to hand transactions on an almost daily basis. Members of the group routinely discouraged others from the block by approaching vehicles that came into the area and asking the occupants why they were there. Furthermore, members of the group, including defendant Cunningham, regularly went to the same buildings before (and sometimes after) conducting hand-to-hand transactions. These locations included 1657 11th Place N.E.

Officers with the Metropolitan Police Department (MPD) introduced confidential informants (CIs) and undercover officers (UCs) into the area to make controlled purchases of narcotics. From June 2023 through March 2024, the CIs and UCs made approximately 42 controlled purchases of narcotics from members of the group. Most of these controlled purchases took place in the 1100 block of Raum Street, N.E., Washington, D.C. These purchases total over 600 grams of fentanyl and approximately 150 grams of cocaine base.

With regard to defendant Cunningham, over the course of approximately 30 controlled

purchases, the CIs and UC purchased 519.695 grams of fentanyl, 56.01 grams of cocaine, and 66.664 grams of cocaine base.

The CIs initially made smaller purchases of narcotics from another co-conspirator, at the direction of defendant Cunningham. As they began to buy larger amounts on a more regular basis, defendant Cunningham began to deal with the CIs directly. Likewise, the UC initially began buying smaller amounts of narcotics from Cunningham, but later bought large quantities of fentanyl from Cunningham. In particular, the UC purchased more than 40 grams of fentanyl directly from Cunningham on *six* separate occasions. Cunningham also sold the UC a firearm. While there was no formal, written agreement, defendant Cunningham admits that he agreed to distribute and possess with intent to distribute narcotics with other members of the group.

On Thursday May 23, 2022, law enforcement executed a search warrant at 1657 11th Street, N.E. Law enforcement had observed defendant Cunningham going into this suspected stash house on numerous occasions. Law enforcement recovered: (1) multiple digital scales with white residue; (2) a false book containing six twists each containing a white substance suspected to be a controlled substance; (3) one plastic bag containing 27 small zips each containing a white rock like substance suspected to be a controlled substances (4) five firearms and multiple magazines and rounds of various ammunition. DNA analysis completed after the defendant's guilty plea did not show strong support for including him as a contributor to the DNA found on these firearms.

### III.   SECTION 3553 FACTORS

As noted above, after calculating and consulting the appropriate Guideline range, the Court must consider the factors set forth in 18 U.S.C. § 3553(a). The Government addresses the relevant factors in this case below.

A. **Nature and Circumstances of the Offense**

The nature of this offense is undoubtedly serious. The defendant repeatedly distributed narcotics including cocaine base, fentanyl, and fentanyl analogue to the UC and CIs. He also sold a firearm to the UC. His illegal conduct spanned several months from October 2023 through February 2024 so this was not a one-time indiscretion by the defendant.

Further, as the Court knows, fentanyl is an extremely lethal drug. Two milligrams of fentanyl can be fatal. *See United States v. Glasgow*, 2021 WL 2403136 at *7 (D.D.C.) (Lamberth, J.). According to the DEA, "[f]entanyl is a Schedule II controlled substance that is similar to morphine but about 100 times more potent. . . . Because of its potency and low cost, drug dealers have been mixing fentanyl with other drugs including heroin, methamphetamine, and cocaine, increasing the likelihood of a fatal interaction. . . . Two milligrams of fentanyl can be lethal depending on a person's body size, tolerance and past usage."[2] According to the Centers for Disease Control, D.C. ranked number one in the nation for drug overdose deaths, based on the age-adjusted rate of deaths per 100,000 persons in 2021. For opioid overdose deaths specifically in 2021, D.C. ranked number two in the nation, trailing just behind West Virginia by 7%.[3] In 2022, D.C. had a record 448 opioid overdose deaths – on average, 37 opioid overdose deaths per month.[4] This is up from 427 in 2021, and 411 in 2020, according to the city's medical examiner. Six out

---

2 https://www.dea.gov/resources/facts-about-fentanyl
3 https://www.wusa9.com/article/news/local/dc-health-advocates-urge-mayor-to-declare-opioid-crisis-a-public-health-emergency/65-8cad9abd-af25-4013-bcb1-51e8e67dfa84; https://www.cdc.gov/drugoverdose/fatal/dashboard/index.html
4 https://www.wusa9.com/article/news/local/dc-health-advocates-urge-mayor-to-declare-opioid-crisis-a-public-health-emergency/65-8cad9abd-af25-4013-bcb1-51e8e67dfa84; https://www.washingtonpost.com/dc-md-va/2023/04/04/dc-vending-machine-opioids-narcan/

4

of ten fentanyl-laced fake prescription pills analyzed contain a potentially lethal dose of fentanyl.[5] The defendant repeatedly sold large quantities of fentanyl to the UC in this case. Accordingly, the Government views this as a serious offense that is deserving of a lengthy sentence.

### B. Deterrence and the Need to Protect the Public

As noted above, the defendant illegally possessed and sold a firearm in connection with the drug conspiracy. This was an inherently dangerous act that placed the community at risk. *See, e.g.*, *United States v. Gassaway*, No. 21-CR-550 (RCL), 2021 WL 4206616, at *3 (D.D.C. Sept. 16, 2021) (collecting cases in this district holding that unlawful firearm possession is dangerous to the public); *United States v. Howard*, No. 20-MJ-181 (BAH), 2020 WL 5642288, at *2–3 (D.D.C. Sept. 21, 2020) (making same observation); *United States v. Cole*, 459 F. Supp. 3d 116, 120 (D.D.C. 2020) (noting that a loaded firearm "has the great potential to escalate into violence"). Accordingly, the Government believes a substantial sentence is necessary for purposes of deterrence.

### C. History and Characteristics of the Defendant

In considering the defendant's history and characteristics, the Government acknowledges that he accepted responsibility for his own actions in this case. However, despite being 35 years old, he has had practically no employment history. *See* PSR at 38. He has eight prior adult convictions, including two prior drug convictions, and several additional arrests. *Id.* at 17-32. Moreover, he has repeatedly violated the terms of his prior supervision. The only reasonable conclusion the Government sees is that Mr. Cunningham supports himself by engaging in criminal conduct.

---

5 https://www.dea.gov/onepill

D. **Need to Avoid Sentencing Disparities**

A sentence within the Guidelines will generally avoid unwanted sentencing disparities among defendants who have committed similar crimes. Indeed, "[t]he best way to curtail 'unwarranted' disparities is to follow the Guidelines, which are designed to treat similar offenses and offenders similarly." *United States v. Otunyo*, 63 F.4th 948, 960 (D.C. Cir. 2023) (quoting *United States v. Bartlett*, 567 F.3d 901, 908 (7th Cir. 2009). In its plea offer, the Government agreed to ask for a sentence within the non-career offender range, and it will stand by that offer.

IV. **CONCLUSION**

For the reasons stated herein, the Government requests that the Court impose a sentence of 150 months. The Government will move to dismiss the remaining counts of the indictment at sentencing pursuant to the plea agreement. Finally, the Government will submit a Consent Order of Forfeiture as to the firearm in this case.

Respectfully submitted,

JEANINE PIRRO
UNITED STATES ATTORNEY

BY: _____/s/_____
NIHAR MOHANTY
Assistant United States Attorney
D.C. Bar Number 436686
United States Attorney's Office
601 D Street, NW
Washington, DC   20530
Telephone: (202) 252-7700
Email: Nihar.Mohanty@usdoj.gov