UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| | : | |
| | : | |
| v. | : | Case No. 24-cr-246-5 (JEB) |
| | : | |
| JALONIE HOOPER, | : | |
| | : | |
| Defendant. | : | |

**GOVERNMENT'S MEMORANDUM IN AID OF SENTENCING**

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, hereby submits its Memorandum in Aid of Sentencing. For the reasons herein and in accordance with the plea agreement, the Government requests that the Court sentence the defendant to 24 months of incarceration and impose a period of three years of supervised release.

**I.  SENTENCING FACTORS**

In sentencing a defendant, after calculating the appropriate Guideline range, the Court must consider the factors set forth in 18 U.S.C. § 3553.[1] *See Gall v. United States*, 552 U.S. 38 (2007). These factors are in keeping with the traditional factors used by courts when imposing a sentence: (1) the protection of society against wrongdoers; (2) the punishment or discipline of the wrongdoer; (3) the reformation of the wrongdoer; and (4) the deterrence of others from the commission of like offenses. *See Spanziano v. Florida*, 468 U.S. 447, 477-78 (1984) (Stevens, J., concurring); *see also Williams v. New York*, 337 U.S. 241, 251 (1949). Further, under the

---

[1] The Government believes the Pre-Sentence Report (PSR) correctly states that the defendant's Guideline range is 30-37 months. However, the Government extended the plea offer to the defendant when it was required to treat cocaine base as powder cocaine resulting in an estimated range of 24-30 months. The Government will stand by the offer it made to the defendant.

Guidelines and Section 3553, similarly situated defendants should receive like punishments. *See* 18 U.S.C. § 3553(a)(6).

## II. FACTUAL AND PROCEDURAL BACKGROUND

As set forth in the proffer submitted in support of the plea agreement, in July of 2023, in connection with an investigation into drug trafficking in the Trinidad neighborhood, law enforcement installed pole cameras in the 1100 block of Raum Street, N.E., Washington, D.C. Video from the cameras showed a group of men making hand-to-hand transactions with the individuals who came into the area, and they engaged in these hand-to hand transactions on an almost daily basis. Members of the group routinely discouraged others from the block by approaching vehicles that came into the area and asking the occupants why they were there. While there was no formal, written agreement, Mr. Hooper was part of the group. Over the course of several controlled purchases, he sold the confidential informants (CIs) 31.6 grams of fentanyl.

Also, on or about August 12, 2023, at approximately 11 p.m., MPD officers were called to 1600 block of V Street, N.W., Washington, D.C. for an alleged domestic assault involving defendant Hooper. Although the simple assault charges were later dismissed, in an arresting Mr. Hooper, officers found approximately 50 grams of cocaine base on his person.

## III. SECTION 3553 FACTORS

As noted above, after calculating and consulting the appropriate Guideline range, the Court must consider the factors set forth in 18 U.S.C. § 3553(a). The Government addresses the relevant factors in this case below.

### A. Nature and Circumstances of the Offense]

The nature of this offense is undoubtedly serious. The defendant was part of a large-scale

2

drug conspiracy. Further, as the Court knows, fentanyl is an extremely lethal drug. Two milligrams of fentanyl can be fatal. *See United States v. Glasgow*, 2021 WL 2403136 at *7 (D.D.C.) (Lamberth, J.). According to the DEA, "[f]entanyl is a Schedule II controlled substance that is similar to morphine but about 100 times more potent. . . . Because of its potency and low cost, drug dealers have been mixing fentanyl with other drugs including heroin, methamphetamine, and cocaine, increasing the likelihood of a fatal interaction. . . . Two milligrams of fentanyl can be lethal depending on a person's body size, tolerance and past usage."[2] According to the Centers for Disease Control, D.C. ranked number one in the nation for drug overdose deaths, based on the age-adjusted rate of deaths per 100,000 persons in 2021. For opioid overdose deaths specifically in 2021, D.C. ranked number two in the nation, trailing just behind West Virginia by 7%.[3] In 2022, D.C. had a record 448 opioid overdose deaths – on average, 37 opioid overdose deaths per month.[4] This is up from 427 in 2021, and 411 in 2020, according to the city's medical examiner. Six out of ten fentanyl-laced fake prescription pills analyzed contain a potentially lethal dose of fentanyl.[5] Accordingly, while the defendant played a smaller role in the conspiracy, the Government views this as a serious offense.

---

2 https://www.dea.gov/resources/facts-about-fentanyl
3 https://www.wusa9.com/article/news/local/dc-health-advocates-urge-mayor-to-declare-opioid-crisis-a-public-health-emergency/65-8cad9abd-af25-4013-bcb1-51e8e67dfa84; https://www.cdc.gov/drugoverdose/fatal/dashboard/index.html
4 https://www.wusa9.com/article/news/local/dc-health-advocates-urge-mayor-to-declare-opioid-crisis-a-public-health-emergency/65-8cad9abd-af25-4013-bcb1-51e8e67dfa84; https://www.washingtonpost.com/dc-md-va/2023/04/04/dc-vending-machine-opioids-narcan/
5 https://www.dea.gov/onepill

### B. Deterrence and the Need to Protect the Public

As noted above, the defendant repeatedly sold to the CIs. Between July 2023 and January 2024, he sold to the CIs approximately eight times. To be fair, he generally sold small amounts of narcotics to them. However, his repeated sales demonstrate that he was part of the group and warrant a period of incarceration.

### C. History and Characteristics of the Defendant

In considering the defendant's history and characteristics, the Government must acknowledge that he accepted responsibility for his own actions in this case. The Government also acknowledges that this is the defendant's first criminal conviction.

The defendant is 26 years old. While the Government believes a lower sentence is appropriate, it believes the defendant must make a serious commitment to changing his behavior. He will either take advantage of drug treatment and educational opportunities in prison or find himself back in prison soon. *See, e. g., Qualis v. United States*, 373 F. Supp. 2d 873, 877 (E.D. Wisc. 2005 ) ("It is appropriate for a court, when considering the type of sentence necessary to protect the public and to deter future misconduct, to note the length of any previous sentences imposed.").

### D. Need to Avoid Sentencing Disparities

A sentence within the Guidelines will generally avoid unwanted sentencing disparities among defendants who have committed similar crimes. Indeed, "[t]he best way to curtail 'unwarranted' disparities is to follow the Guidelines, which are designed to treat similar offenses and offenders similarly." *United States v. Otunyo*, 63 F.4th 948, 960 (D.C. Cir. 2023) (quoting *United States v. Bartlett*, 567 F.3d 901, 908 (7th Cir. 2009). However, given the defendant's age,

4

lack of criminal history, and the plea offer extended under prior DOJ policy, the Government believes a sentence of 24 months is sufficient.

## IV. CONCLUSION

For the reasons stated herein, the Government requests that the Court impose a sentence of 24 months. The Government will move to dismiss the remaining charges in the indictment and in the defendant's Superior Court case at sentencing.

                              Respectfully submitted,

                              JEANINE PIRRO
                              UNITED STATES ATTORNEY

BY:        /s/_____
            NIHAR MOHANTY
            Assistant United States Attorney
            D.C. Bar Number 436686
            United States Attorney's Office
            601 D Street, NW
            Washington, DC   20530
            Telephone: (202) 252-7700
            Email: Nihar.Mohanty@usdoj.gov